# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44172

STATE OF IDAHO,

      Plaintiff-Appellant,

v.

ANTONIA KATE FULLER,

      Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)

Boise, January 2018 Term

2018 Opinion No. 41

Filed: April 26, 2018

Karel A. Lehrman, Clerk

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

The decision of the district court is <u>affirmed</u>.

Honorable Lawrence G. Wasden, Idaho Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Eric D. Fredericksen, State Appellate Public Defender, Boise, for respondent. Sally J. Cooley argued.

_____

BURDICK, Chief Justice.

In this appeal, the State challenges the Kootenai County district court's decision to grant Antonia Kate Fuller's motion to suppress evidence seized during a traffic stop. Because we conclude the traffic stop was unconstitutional, we affirm the district court's order suppressing the evidence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 6, 2015, Deputy Harvey Ballman of the Kootenai County Sheriff's Department was patrolling the area near the intersection of Highways 95 and 53 in Kootenai County. At approximately 10:50 p.m., Deputy Ballman was traveling westbound on Highway 53 when he observed a vehicle, driven by Fuller, traveling a few car lengths in front of him. As Deputy Ballman followed Fuller, the roadway began to make a right-hand curve. When Fuller continued on the roadway and drove her vehicle around the right-hand curve, Deputy Ballman

1

observed the front passenger-side tire of Fuller's vehicle drive onto and temporarily across the solid white line on the right-hand side of the roadway (i.e., the fog line). Deputy Ballman then initiated a traffic stop, citing Fuller's failure to maintain her lane of travel as required under Idaho Code section 49-637(1).

During the traffic stop, Deputy Ballman discovered that Fuller did not have a valid driver's license or liability insurance. Deputy Ballman placed Fuller under arrest for violations of Idaho Code sections 49-301(1) and 49-1232 before conducting an inventory search of her vehicle. That search revealed methamphetamine, prescription drugs, and drug paraphernalia. Accordingly, he expanded the arrest for violations of Idaho Code sections 37-2732(c)(1) (possession of a controlled substance) and 37-2734A (possession with intent to use drug paraphernalia). Fuller was never cited for a traffic offense.

Fuller's preliminary hearing was held on January 28, 2016, at which Deputy Ballman testified that he observed Fuller's tire "touch[] the [fog] line multiple times and cross[] the [fog] line." He explained that he initiated the traffic stop due to Fuller's failure to maintain her lane of travel under section 49-637(1) when her tire crossed the fog line.[1] Fuller was thereafter charged with two felony counts of possession of a controlled substance, and misdemeanor counts of possession of drug paraphernalia, failure to purchase a driver's license, and failure to provide proof of insurance.

Fuller moved to suppress the seized evidence on the grounds that it was fruits of an unlawful traffic stop in violation of the United States and Idaho Constitutions. During a hearing on the motion, the parties stipulated that the front passenger-side tire of Fuller's vehicle crossed the fog line once and that she did not have her turn signal on at the time. Although the district court accepted the parties' stipulation, the district court reviewed a dashboard camera video recording from Deputy Ballman and explained as follows:

---

[1] While Deputy Ballman further testified that he "believed that [Fuller] may have been intoxicated," he did not cite this as a reason for initiating the traffic stop. Likewise, at the motion to suppress hearing, the State clarified that, "with regard to any articulable suspicion that there was drunk driving or driving under the influence, the State is not alleging that that was a basis for the stop." Rather, the State's position was that "the basis for th[e] stop was a violation of Idaho Code section 49-637(1)." As the district court summarized,

> The State resisted the motion to suppress on the grounds that there was a traffic violation [that] had been committed in the presence of an officer. That traffic violation being the failure to maintain a lane of travel and the theory of that detention was predicated on the stipulation by the parties that Ms. Fuller's vehicle -- tires on the right-hand side of the vehicle had crossed over what's commonly called the fog line, had not just touched the fog line, but had crossed over it.

I have to say that I'm balancing that against the Court's observations of the dash-cam. I could not exactly tell whether there was a complete crossing of that fog line. I mean, it looked pretty close, but whether, you know, some of the tire remained touching the fog line or not, the tires, I was just unsure, but it was pretty close to crossing the whole line.

After considering the parties' arguments, the district court ultimately concluded Deputy Ballman did not have a reasonable, articulable suspicion that section 49-637(1) was violated. The district court thus granted Fuller's motion to suppress. The State now appeals.

## II. STANDARD OF REVIEW

We apply a bifurcated standard when reviewing a motion to suppress. *State v. Danney*, 153 Idaho 405, 408, 283 P.3d 722, 725 (2012). The trial court's findings of fact are accepted if supported by substantial and competent evidence. *Id.* Conversely, we will freely review the application of constitutional principles to the factual findings. *Id.*

## III. ANALYSIS

The Fourth Amendment to the U.S. Constitution, as incorporated under the Fourteenth Amendment's due process clause so as to apply to the states, guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV; *see also* Idaho Const. art. I, § 17. "Traffic stops constitute seizures under the Fourth Amendment." *State v. Henage*, 143 Idaho 655, 658, 152 P.3d 16, 19 (2007) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Yet, "[l]imited investigatory detentions are permissible when justified by an officer's reasonable articulable suspicion that a person has committed, or is about to commit, a crime." *State v. Morgan*, 154 Idaho 109, 112, 294 P.3d 1121, 1124 (2013). As such, two possible justifications for a traffic stop exist: (1) the officer has a reasonable, articulable suspicion that the driver has committed an offense, such as a traffic offense, or (2) the officer has a reasonable, articulable suspicion that the driver is engaged in other criminal activity, such as driving under the influence. *State v. Neal*, 159 Idaho 439, 442, 362 P.3d 514, 517 (2015).

"Reasonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts." *Morgan*, 154 Idaho at 112, 294 P.3d at 1124. "Reasonable suspicion requires more than a mere hunch or 'inchoate and unparticularized suspicion.'" *Id.* at 112, 294 P.3d at 1124 (quoting *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009)). The "whole picture" must yield a particularized and objective basis for suspecting a violation of the law. *State v. Haworth*, 106 Idaho 405, 406, 679 P.2d 1123, 1124

3

(1984) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). "The test for reasonable suspicion is based on the totality of the circumstances known to the officer at or before the time of the stop." *Neal*, 159 Idaho at 443, 362 P.3d at 518. Moreover, "[t]he suspicion for the stop must be based upon objective information available to the officer when he decided to make the stop, and cannot be bolstered by evidence gathered following the stop." *Id.* (quoting *State v. Emory*, 119 Idaho 661, 664, 809 P.2d 522, 525 (Ct. App. 1991)).

The factual record before the district court consisted of the parties' stipulation and the dashboard camera video recording of the traffic stop. Since no argument is made on appeal concerning the district court's factual record or findings, the only issue before this Court is whether the district court's legal conclusion that Deputy Ballman did not have a reasonable, articulable suspicion to conduct the traffic stop was correct. The State challenges that conclusion by arguing the stop was constitutional because Deputy Ballman had a reasonable, articulable suspicion that Fuller violated either Idaho Code section 49-637(1) or Idaho Code section 49-630(1). We analyze each code section in turn.

1.  The traffic stop was not justified by reasonable, articulable suspicion of a violation of section 49-637(1).

The State first contends that Deputy Ballman had a reasonable, articulable suspicion that Fuller violated section 49-637(1) when he observed her front passenger-side tire cross the fog line. The statute reads as follows:

> Whenever any highway has been divided into two (2) or more clearly marked lanes for traffic the following, in addition to all else, shall apply:
>
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

I.C. § 49-637(1).

The parties' arguments focus primarily on our decision in *Neal*, where we analyzed whether the fog line itself was within the "lane of travel" under section 49-637(1). 159 Idaho at 444–47, 362 P.3d at 519–22; *id.* at 447, 362 P.3d at 522 (Horton, J., concurring in part and dissenting in part) ("[T]he real question is: 'What does it mean to drive "within a single lane?"'"). *Neal* concerned a defendant who drove his pickup's tires onto, but not across, the roadway's right-hand fog line. *Id.* at 441, 362 P.3d at 516. After observing the defendant do so, law enforcement initiated a traffic stop. *Id.* The traffic stop ultimately led to the defendant's arrest for driving under the influence of alcohol. *Id.* The defendant moved to suppress evidence

4

seized during the traffic stop, contending the traffic stop was unconstitutional. *Id.* The State countered that law enforcement had a reasonable, articulable suspicion that the defendant had violated section 49-637(1) by driving his pickup onto the fog line. *Id.* The magistrate court granted the defendant's motion to suppress, but the district court reversed that ruling on the State's appeal to the district court. *Id.* at 441–42, 362 P.3d at 516–17.

This Court in *Neal* reversed the ruling of the district court. *Id.* at 447, 362 P.3d at 522. We held that the traffic stop was not supported by a reasonable, articulable suspicion that section 49-637(1) was violated. *Id.* at 444–47, 362 P.3d at 519–22. In reaching that conclusion, we explained that

> the edge line may or may not even be present on the roadway; its purpose is not to create a lane boundary but to inform the driver of the road's edge so that under certain conditions the driver can safely maintain his or her position on the roadway. Because the edge lines are not always present, if they are not part of the lane, then the usable portion of the lane would actually be widening or narrowing depending on whether there is a line present. Where the lines are absent, the edge of the road is considered the curb, and it is an unreasonable interpretation to conclude that where there is a stripe near the edge, the inside of the stripe marks the limits of where a driver's tires can go, but where it is absent, the curb—which would be located at the outer edge of the painted line—marks those limits.
>
> Further, the motor vehicle code in general often encourages or requires drivers to move to the right. . . .

*Id.* at 445–46, 362 P.3d at 520–21 (internal citation omitted).

Here, the State points to *Neal*'s construction of section 49-637(1) and contends that Fuller breached her lane of travel when her vehicle's front passenger-side tire temporarily crossed the fog line. Specifically, the State quotes *Neal* and argues that "nothing in [*Neal*] suggests that driving 'across the line marking the right edge of the road' does not violate . . . [section] 49-637." The district court erred, the State's argument continues, "by expanding the holding of *Neal* to crossing the line marking the right edge of the road when [this Court] specifically limited that holding to driving on, and not over, that line." While the State is correct to note that here it is stipulated that the fog line was temporarily crossed, whereas in *Neal* the fog line was temporarily touched but not crossed, the State's argument reveals a misreading of *Neal*.

Nowhere in *Neal* did we suggest that the fog line signifies a lane barrier. We were careful to emphasize that the fog line is *not* a lane barrier. As recited above, we clearly explained that the fog line "may or may not even be present on the roadway; its purpose is not to create a lane boundary but to inform the driver of the road's edge so that under certain conditions the driver

5

can safely maintain his or her position on the roadway." *Id.* at 445–46, 362 P.3d at 520–21. Where the fog line is present, it is not "painted on the sidewalks, curbs, shoulders, or beyond the roadway's edge." *Id.* at 446, 362 P.3d at 521. Instead, the fog line, if present, is "painted onto the roadway itself." *Id.* Were we to accept the State's argument that the fog line signifies a lane barrier, "the usable portion of the lane would actually be widening or narrowing depending on whether there is a line present." *Id.* We rejected this result in *Neal*, and we reject it again here.

*Neal* thus does not assist the State in this case. *Neal* was unequivocally clear that an isolated incident of touching the fog line does not violate section 49-637(1). And given that the fog line does not signify a formal lane barrier, an isolated incident of temporarily crossing the fog line likewise does not violate section 49-637(1). This reasoning resolves the State's appeal. Thus, we conclude the district court correctly applied *Neal* to reason that

> the principle of law articulated in *Neal* is that the fog line is not a road barrier; the fog line is, in fact, a warning that one is getting near the road barrier.
>
> Therefore, it makes sense that tires traveling onto the fog line does not constitute a traffic violation, it just constitutes driving on the warning line. And the Court also finds that crossing over the fog line under these circumstances did not constitute a traffic violation. . . . [T]he vehicle did not leave its lane of travel. It did not drive off the road. It stayed on the lane of travel. Getting towards the edge, for sure, but maintained its lane of travel.

We reiterate the rule recently pronounced in *Neal* by emphasizing that the fog line, if present, does not serve to demarcate the boundary of the lane of travel. If present, the fog line serves as a point of reference that is geared toward ensuring drivers' safety. *Neal*, 159 Idaho at 447, 362 P.3d at 522 ("The evil to be remedied in this statute is to prevent dangerous, unsafe movement out of a lane of traffic and into another lane of traffic."). The fog line is especially useful when driving in inclement weather or when driving conditions are otherwise adverse. Merely that a tire temporarily touches or crosses the fog line will not by itself give rise to a reasonable, articulable suspicion that section 49-637(1) has been violated. To be sure, driving onto or across the fog line may be considered when evaluating whether an overall pattern of erratic or unsafe driving gives rise to a reasonable, articulable suspicion that section 49-637(1) has been violated under the totality of circumstances. But that suspicion must be based on more than one tire temporarily touching or briefly crossing the fog line. *Compare United States v. Delgado-Hernandez*, 283 F. App'x 493, 499 (9th Cir. 2008) ("By crossing over the fog line for a brief instance, Delgado-Hernandez neither posed a safety threat nor failed to drive as nearly as practicable within a single lane."), *with United States v. Alvarado*, 430 F.3d 1305, 1309 (10th

Cir. 2005) ("[W]e hold that Trooper Bowles had a reasonable articulable suspicion that Alvarado, by crossing *one foot* over the fog line, had violated [the statute]." (emphasis added)); *United States v. Williams*, 945 F.Supp.2d 665, 672 (E.D. Va. 2013) ("[T]he officer witnessed Defendant's vehicle repeatedly weaving and driving on one of the fog lines on at least five occasions. The initial touching lasted for approximately five feet—far from a quick, isolated touching."); *People v. Geier*, 944 N.E.2d 793, 795 (Ill. App. Ct. 2011) (concluding traffic stop was based on reasonable, articulable suspicion when "all four tires passed over the fog line" and, further, the "front wheel crossed over the center line"); *State v. McBroom*, 39 P.3d 226, 229 (Or. Ct. App. 2002) ("[D]efendant drove for more than 300 feet on the center line for no apparent reason. Given those facts, the officer reasonably believed that defendant had failed to stay 'within [his] lane' in violation of subsection (a) of the statute.").

In sum, the district court correctly held that the traffic stop was not justified by reasonable, articulable suspicion of a violation of section 49-637(1).

2.    We decline to reach the State's argument concerning section 49-630(1).

On appeal, the State further contends that Deputy Ballman had reasonable suspicion that Fuller violated section 49-630(1). However, the State raises this argument without having asserted the same before the district court. While the State referenced our discussion of section 49-630 in *Neal*, it did not advance an argument in *Neal* or in this case that the statute was violated. That section 49-630 was not raised below spells the fatal resolution of this argument on appeal. Indeed, "[i]ssues not raised below will not be considered by this court on appeal, and the parties will be held to the theory upon which the case was presented to the lower court." *State v. Garcia-Rodriguez*, 162 Idaho 271, ___, 396 P.3d 700, 704 (2017) (quoting *Heckman Ranches, Inc. v. State, By & Through Dep't of Pub. Lands*, 99 Idaho 793, 799–800, 589 P.2d 540, 546–47 (1997))). Accordingly, we decline to reach the State's argument concerning section 49-630(1).

### IV. CONCLUSION

Because the traffic stop was unconstitutional, we affirm the order of the district court granting Fuller's motion to suppress.

Justice BEVAN and Justice pro tem KIDWELL CONCUR.

7

BRODY, Justice, concurring in judgment.

I agree with the majority that the district court properly granted Fuller's suppression motion. Nonetheless, I write separately because I reach that conclusion through a different application of Idaho Code section 49-637(1).

The statute provides:

Whenever any highway has been divided into two (2) or more clearly marked lanes for traffic the following, in addition to all else, shall apply:

(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.

I.C. § 49-637(1). Implicit in this statute is that it cannot be violated if the lane of travel is not breached. Therefore, when section 49-637(1) is raised, the first question we must ask is what was the lane of travel? To answer this question, the court must examine the roadway at issue to determine the precise boundaries of that lane.

As noted by the majority, the district court concluded that Fuller did not violate the statute because she remained in her lane of travel. The district court did not expressly find the boundaries of that lane, and instead explained that Fuller did not breach the lane despite crossing the fog line because of this Court's opinion in *State v. Neal*, 159 Idaho 439, 362 P.3d 514 (2015). The majority affirms this conclusion and emphasizes that the *Neal* opinion set forth the rule that edge lines do not demarcate the boundaries of lanes of travel. It seems to me that reciting this rule in an absolute nature overstates the holding in *Neal* and may cause future confusion in the application of section 49-637(1).

In interpreting the statute, the Court in *Neal* sought to answer a more specific question for the same broad inquiry identified above: namely, is an edge line part of the lane of travel such that driving onto the line does not equal breaching the lane under section 49-637(1). 159 Idaho at 444, 362 P.3d at 519; *see also id.* at 447, 362 P.3d at 522 (Horton, J., concurring in part and dissenting in part) (framing the issue as "What does it mean to drive 'within a single lane?'"). This issue arose from the case-specific fact that the defendant had driven onto but not across an edge line. *Id.* at 441, 362 P.3d at 516 (majority opinion). The Court ultimately concluded that edge lines are part of the lane of travel, which in turn meant that the defendant's driving onto the line was not considered a breach of the lane. *Id.* at 445–47, 362 P.3d at 520–22.

Thus, to the extent that *Neal* explains that the edge line itself is part of the lane of travel, this comports with the facts presented in that case. *Neal* did not need to further determine what constituted the boundaries of the lane in question because the Court's holding naturally meant that the defendant had not breached the lane. Unlike in *Neal*, Fuller drove onto and across the fog line. As such, simply resorting to *Neal* is not an option here because there still remains the unanswered question of what constituted the lane of travel based on the facts of this case.

In *Neal*, the Court rightly acknowledged that the unique nature of the State's different roadways forecloses the ability to universally define the boundaries of lanes of travel. 159 Idaho at 445–46, 362 P.3d at 520–21. Even so, that does not translate to an inability for a court to determine based on particular facts where those boundaries existed in a specific case. Contrary to the majority, I do not believe that *Neal* should be read to eliminate the possibility that an edge line can directly border a sidewalk, shoulder, berm, or right-of-way, any of which would represent the end of both the roadway and the lane of travel. I.C. §§ 49-119(19), 49–121(4). Because I find this to be the case here, I disagree with the district court's conclusion that Fuller remained in her lane of travel.

Turning to the record, the highway at issue is a stretch of Highway 53 near its intersection with Highway 95 in Kootenai County. Review of the dashboard camera recording establishes that this portion of the highway is designed to permit two lanes of parallel traffic traveling in opposite directions. Westbound vehicles—which included Fuller and Deputy Ballman—have a solid yellow center line to their left and a solid white fog line to the right. (Eastbound vehicles have a yellow center line that switches from dashed to solid and a solid white fog line.) Beyond the fog line is approximately two feet of pavement. This is followed by approximately three to four feet of unpaved or gravel contour before natural vegetation begins. The recording shows that the highway curves in a rightward direction. Through the curve, the paved portion of the highway gently slopes down toward the inside fog line (i.e., from left to right from the perspective of westbound vehicles).

The State alleged that Fuller drove on the shoulder. Reviewing the recording, I would agree, finding that, for this stretch of highway, the lane of travel for westbound traffic spanned from the inner edge of the yellow center line to the outer edge of the white fog line. Beyond the outer edge of the fog line constituted a shoulder. While "shoulder" is not defined in the Idaho Code, the Court has previously relied on the relevant dictionary definition, which reads: "the part of a roadway outside of the traveled way on which vehicles may be parked in an emergency."

9

*Neal*, 159 Idaho at 445, 362 P.3d at 520 (citing *Shoulder*, Webster's Third New International Dictionary (2002)). Shoulders are not a part of the roadway, and, therefore, they are also not a part of the lane of travel. I.C. §§ 49-119(19), 49–121(4).

Presuming that the space beyond the fog line was a shoulder, the inquiry into whether Fuller breached the lane of travel is complete. She breached the lane when her front right tire crossed over the outer edge of the line. Importantly, reaching this conclusion does not disturb *Neal*'s holding that an edge line itself is part of the lane of travel, and merely recognizes that this roadway featured a shoulder that directly abutted the outer edge of the fog line.

Finding that Fuller breached the lane does not necessarily establish that she violated the statute. Rather, in situations of this kind, the greater statutory language reveals that other considerations must be made to determine whether such a conclusion is merited. *See, e.g.*, *State v. Morris*, 159 Idaho 651, 654–55, 365 P.3d 407, 411–12 (Ct. App. 2015) (addressing the statutory phrase "as nearly as practicable"). The majority recognizes as much by citing to cases from other jurisdictions that have interpreted similarly constructed statutes. Each of these courts focused their application on the broader statutory language "*as nearly as practicable* entirely within a single lane." For example, in *United States v. Delgado-Hernandez*, the defendant was stopped after he was observed driving on the paved corridor between the outer edge of the fog line and the gravel edge of the median. 283 F. Appx. 494–95 (9th Cir. 2008). Notwithstanding the breach of the lane of travel, the Ninth Circuit concluded that the defendant did not violate the statute because of the plain language of Nevada's similarly worded provision. *Id.* at 499 ("Otherwise the 'as nearly as practicable' language is mere surplusage if a driver violates the statute whenever, absent a legal lane change, he fails to remain in a single lane on a multi-lane road."). Similarly, here, I believe that Fuller's minor breach of the lane of travel would not constitute a violation of section 49-637(1) in light of the entire text of the statute.

Because the proceedings below centered solely on *Neal*, which itself focused on the nature of edge lines within the lane of travel, this case does not present an opportunity to consider the statutory language more fully. With that being the case, I recognize the precedential weight of *Neal* and concur in judgment with the majority.

Justice Pro Tem GUTIERREZ CONCURS.

10