**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 45174**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: March 6, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **SUBSTITUTE OPINION** |
| RONALDO DEAN ISLAS, | ) **THE COURT'S PRIOR OPINION** |
| | ) **DATED DECEMBER 5, 2018,** |
| Defendant-Appellant. | ) **IS HEREBY WITHDRAWN** |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Richard S. Christensen, District Judge.

Order denying motion to suppress, <u>reversed in part</u>, <u>affirmed in part</u>, and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant. Kimberly A. Coster argued.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

---

HUSKEY, Judge

Ronaldo Dean Islas appeals from the district court's judgment of conviction. He argues the district court erred when it denied his motion to suppress. We reverse the portion of the district court's order denying the suppression of the marijuana tincture droplets and tissue paper from Islas's pocket. We affirm the remainder of the district court's order and remand this case to the district court for further proceedings consistent with this opinion.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

An officer observed a vehicle enter a public roadway at 9:02 p.m., fourteen minutes after sunset, and continue on the roadway without activating its headlights for five or six seconds. The officer stopped the vehicle and approached the driver, Islas. The officer detected an odor of

1

alcohol coming from inside Islas's vehicle and observed that Islas had glassy and bloodshot eyes. The officer also observed small, circular pieces of glass on Islas's lap and that Islas's pants were unzipped. After these observations, the officer ordered Islas out of the vehicle, causing the glass pieces to fall from Islas's lap to the ground outside the vehicle.

The officer then conducted a horizontal gaze nystagmus test and concluded Islas was not under the influence of alcohol. The officer detained Islas and proceeded to examine the glass pieces further, specifically observing one piece that was thickly coated with a white and brown crystalline substance the officer suspected to be methamphetamine, leading him to the conclusion that the pieces likely belonged to a methamphetamine pipe. The officer placed Islas in handcuffs, searched his person, discovered marijuana in the form of marijuana tincture droplets and tissue paper the officer believed was used to wrap the methamphetamine pipe, and informed Islas he was under arrest for the possession of marijuana. The officer then conducted a field test of the substance found on the glass piece, which indicated a presumptive positive for methamphetamine. A drug dog was called to the scene; the dog indicated on Islas's vehicle. While searching the vehicle, the officer discovered more glass pieces under the driver's seat which appeared to belong to a methamphetamine pipe, along with additional tissue paper, and a baggie containing approximately one gram of methamphetamine in the trunk.

The State charged Islas with felony possession of a controlled substance, methamphetamine, Idaho Code § 37-2732(c)(1); misdemeanor possession of a controlled substance, marijuana, I.C. § 37-2732(c)(3); and misdemeanor possession of paraphernalia, I.C. § 37-2734A(1). Islas filed a motion to suppress the evidence, arguing that he was unlawfully stopped, the stop was unlawfully prolonged, and he was unlawfully searched. The State made two arguments in its written opposition to the motion to suppress: first, that the officer had reasonable and articulable suspicion that a traffic offense had been committed because the officer observed a violation of I.C. § 49-903; and second, the extension of the stop to investigate the broken glass was lawful because the officer had specific facts from which the officer could infer further criminal activity. The State conceded the search of Islas's pockets was not lawful and that the marijuana tincture droplets and tissue paper should be suppressed, but opposed the suppression of the other evidence. At the suppression hearing, the State proffered a third argument: the broken glass constituted littering, which could have justified the further investigation of the glass.

2

At the suppression hearing, the parties focused on presenting evidence and argument regarding the suppression of the methamphetamine; little, if any, evidence or argument was presented regarding the marijuana and paraphernalia charges, likely because the State had already conceded the evidence should be suppressed. The district court denied the motion, and explained why it denied the motion as it related to the methamphetamine. The order did not specify whether it was suppressing all evidence, including the marijuana, or just the evidence that was presented and argued about at the hearing, which was only the methamphetamine. The district court ordered the State to draft the order. The State did so, making no mention that the evidence it had already conceded should be suppressed. Islas then entered a conditional guilty plea to all the charges, reserving his right to appeal the district court's denial of his motion to suppress. For the felony possession of methamphetamine, the district court sentenced Islas to a unified term of three years, with one and one-half years determinate, suspended the sentence, and placed Islas on probation. The district court granted credit for time served for the two misdemeanors. Islas timely appealed.

## II.

### STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220,

1223 (Ct. App. 2003). Such a detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. In this regard, we must focus on the intensity of the detention, as well as its duration. *Roe*, 140 Idaho at 181, 90 P.3d at 931. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. Brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931.

A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). A peace officer may make a warrantless arrest when a person has committed a public offense in the presence of the peace officer. I.C. § 19-603(1). Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that such person is guilty. *State v. Julian*, 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). In analyzing whether probable cause existed, this Court must determine whether the facts available to the officer at the moment of the seizure warranted a person of reasonable caution to believe that the action taken was appropriate. *Id.*; *State v. Hobson*, 95 Idaho 920, 925, 523 P.2d 523, 528 (1974). The application of probable cause to arrest must allow room for some mistakes by the arresting officer; however, the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusion of probability. *Klinger v. United States*, 409 F.2d 299, 304 (8th Cir. 1969); *Julian*, 129 Idaho at 137, 922 P.2d at 1063. The facts making up a probable cause determination are viewed from an objective standpoint. *Julian*, 129 Idaho at 136-37, 922 P.2d at 1062-63. In passing on the question of probable cause, the expertise and the experience of the officer must be taken into account. *State v. Ramirez*, 121 Idaho 319, 323, 824 P.2d 894, 898 (Ct. App. 1991).

4

# III.

## ANALYSIS

Islas argues the district court erred when it denied his motion to suppress the methamphetamine. He contends the officer unlawfully extended the detention after the officer concluded Islas was not under the influence of alcohol. At that point, Islas argues the officer had no suspicion that Islas had committed, was committing, or was about to commit any criminal activity, yet the officer detained him anyway. As such, Islas reasons that all the evidence obtained thereafter should be suppressed, including the methamphetamine found on the glass piece, the marijuana tincture droplets and paraphernalia on Islas's person, and the paraphernalia and methamphetamine found in Islas's vehicle.

On the other hand, the State appears to argue implicitly that if the district court suppressed the marijuana based on the State's concession, such suppression was incorrect and that this Court would not be bound by that holding. Instead, the State argues the marijuana was admissible based on exceptions to the warrant requirement which were never presented in the district court--the search incident to a valid arrest or inevitable discovery exceptions. The State argues that this Court freely reviews the issue and the applicable law and thus, is not bound by the legal concessions made by the State or legal conclusions reached (or not reached) by the district court. The State further asserts that a de novo standard of review allows an appellate court to affirm the district court on any legal ground, even ones not presented to the district court. Thus, the State asks this Court to affirm the admissibility of the methamphetamine, marijuana tincture droplets, and paraphernalia on two alternate theories raised for the first time on appeal.

In contrast, Islas argues that even a de novo standard of review has some outer parameters and those parameters are the legal arguments made to the district court. In other words, the appellate court can freely review any applicable legal argument made in the district court, even if the district court declined to address or rule on that basis. This is the "right result-wrong theory" rule. But, Islas argues the appellate court, even in a de novo review, cannot address new arguments that could have been, but were not, raised in the district court. Islas refers to this as the "right result-new theory" rule.

**A.** **The Interplay of the Preservation Requirement and the De Novo Standard of Review**

**1.** **The preservation requirement**

This case provides the opportunity to explain the differences between the preservation requirement and the de novo standard of review. Each is a distinct concept and serves a very different purpose. The concept of preservation is derived from the parallel development of the English writ of error (used to correct legal mistakes) and the equity courts (to provide justice). Richard J. Montes & David A. Beatty, *The Preservation Rule in the New York Court of Appeals: How Recent Decisions and Characterizations of the Rule Inform Advocacy*, 78 Alb. L. Rev. 119, 122 (2015); Mary Sarah Bilder, *The Origin of the Appeal in America*, 48 Hastings L.J. 913, 915, note 14 at 926-27 (1997). As American jurisprudence developed, the two processes merged into what is commonly understood to be the current appellate process. There are a variety of reasons the preservation doctrine exists. "First, preservation requirements serve the division of labor between trial courts and appellate courts, whereby trial courts find facts and appellate courts focus on law." John F. Muller, *The Law of Issues*, 49 Wake Forest L. Rev. 1325, 1332 (2014). Second, "preservation requirements limit the costs of litigation, both for parties and for courts. Litigation, as the Supreme Court has stated, is a 'winnowing process,' and preservation rules are 'part of the machinery by which courts narrow what remains to be decided.'" *Id.* (citing *Exxon Shipping Co. v. Bake*r, 554 U.S. 471, 487 n.6 (2008) (quoting *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 531 (1st Cir. 1993))). "Third, preservation requirements help ensure that courts are exposed to the strongest possible arguments as they craft decisions applicable beyond the parties to the dispute." John F. Muller, *The Law of Issues*, 49 Wake Forest L. Rev. 1325 at 1332-33. Finally, preservation defines the bounds of judicial power; courts may not speak the law when they have no authority to do so. *Id.* at 1355-56.

The disagreement regarding preservation requirements lies in how broadly or narrowly a party wishes to define the term "issue." The definition and thus the standard for preservation was clearly addressed in *State v. Garcia-Rodriguez*, 162 Idaho 271, 396 P.3d 700 (2017). In *Garcia-Rodriguez*, the State appealed the district court's order granting Garcia-Rodriguez's motion to suppress evidence. *Id.* at 273, 396 P.3d at 702. In the district court, the State argued that Garcia-Rodriguez was validly arrested pursuant to I.C. § 49-1407. On appeal, the State changed course and argued that the application of I.C. § 49-1407 was irrelevant or immaterial to the analysis of the arrest. *Garcia-Rodriguez*, 162 Idaho at 273, 396 P.3d 702. The State then

advanced a new argument--that there was a separate, constitutional basis for the arrest pursuant to I.C. § 49-301(1) and *Virginia v. Moore*, 553 U.S. 164, 171-72 (2008), which held that probable cause may constitutionally justify arrests regardless of state laws imposing additional requirements. *Garcia-Rodriguez*, 162 Idaho at 274-75, 396 P.3d at 703-04. Garcia-Rodriguez objected to the State raising a new and different argument on appeal than was raised in the district court. *Id.* at 275, 396 P.3d at 704. In response, the State argued that "the issue of whether the 'stop and search' [was] constitutionally reasonable was raised by Garcia in his motion," and "[t]he prosecutor did not have a duty to negate every legal claim proposed in the motion to suppress, only establish the facts showing the officer's actions were reasonable." *Id.*

The Supreme Court expressly rejected both arguments holding, "We have long held that '[a]ppellate court review is limited to the evidence, theories and arguments that were presented below.'" *Id.* (internal citations omitted). The Court also specifically rejected the State's argument that "this Court should apply the correct legal analysis in reaching our decision on appeal, without regard for the arguments advanced before the trial court," by further explaining:

> It is true that "where an order of the district court is correct but based upon an erroneous theory, this Court will affirm upon the correct theory. This doctrine is sometimes called the 'right result-wrong theory' rule." *Idaho Sch. for Equal Educ. Opportunity v. Evans*, 123 Idaho 573, 580, 850 P.2d 724, 731 (1993) (internal citation omitted). While the State properly observes that this Court has corrected lower court decisions based on legal error, we did so when the lower court reached the correct result albeit by way of erroneous legal reasoning. This is not one of those situations. We decline to adopt a "wrong result-wrong theory" approach to reverse a lower court's decision based on issues neither raised nor argued below.

*Garcia-Rodriguez*, 162 Idaho at 275-76, 396 P.3d at 704-05. Consequently, the Supreme Court held that "[b]ecause the constitutionality of arresting Garcia-Rodriguez without regard for Idaho Code section 49-1407(1) was not argued before the district court, it was not properly before the Supreme Court on appeal." *Garcia-Rodriguez*, 162 Idaho at 275-76, 396 P.3d at 704-05. The Court has reiterated both the holding and its underlying premise in several subsequent cases.

For example, in *State v. Cohagan*, 162 Idaho 717, 404 P.3d 659 (2017), the Idaho Supreme Court rejected the State's argument that an appellate court is not bound by the State's legal concessions in the district court and that it can affirm a district court on the "right result-wrong theory" rationale. *Id.* at 721, 404 P.3d at 663. The State, making precisely the same

arguments in this case as it did in *Cohagan*,[1] argued the Supreme Court could affirm the district court on any legal ground, even those conceded in the district court. It was for this reason the State argued that it was not bound by its concession that Cohagan was illegally detained or alternatively, that the Supreme Court could find Cohagan was not unlawfully detained based on the "right result-wrong theory" analysis. The State argued the district court correctly suppressed the evidence and thus, could be affirmed on the ground that either Cohagan was never unlawfully detained despite the State's contrary concession or that even if unlawfully detained, the attenuation doctrine applied and, thus, the evidence need not be suppressed.

A review of the *Cohagan* case shows that the State attempted to distinguish the holding in *Garcia-Rodriguez* by noting that *Garcia-Rodriguez* involved reversing a district court and in *Cohagan*, the State was asking the Supreme Court to affirm the district court on the "right result-wrong theory" rule. The Supreme Court rejected both arguments.

Addressing both whether the State was bound by its legal concession and whether it would consider the never-before-made argument that Cohagan was not illegally detained, the Supreme Court held: "As a threshold matter, the State maintains on appeal, even though it conceded the point below, that the Court must decide whether the interaction between Cohagan and Officer Curtis was lawful. This is incorrect." *Cohagan*, 162 Idaho at 721, 404 P.3d at 663. The Court stated:

> In its briefing before the district court, the State stated that it "concedes that [Cohagan] was unjustifiably seized at the point Officer Curtis chose to retain his license and hold it while running [Cohagan's] information for active warrants." To allow the State to change positions on appeal and argue that the

---

[1] In this case, counsel for the State has failed to disclose relevant contrary authority. *See State v. Fuller*, 163 Idaho 585, 416 P.3d 957 (2018); *State v. Cohagan*, 162 Idaho 717, 404 P.3d 659 (2017); *State v. Garcia-Rodriguez*, 162 Idaho 271, 396 P.3d 700 (2017). This is not the first time this has occurred, as the above cases were not disclosed in briefing or addressed in oral argument in *State v. Hoskins*, Docket No. 45134 (Ct. App. August 31, 2018) (review pending). Despite being explicitly questioned about his failure to address these cases in *Hoskins*, counsel failed to reference the above cases in either briefing or at oral argument until he was asked to address it at oral argument in this case. Moreover, the failure to reference these cases continues in his brief in support of petition for review in *Hoskins*. For example, on page twelve of the State's brief in support of petition for review, without acknowledging or citing to either *Cohagan* or *Fuller*, State's counsel cites only to a 1987 Idaho Supreme Court case for the proposition that an argument must be first presented to the district court to be preserved for appeal. We cannot fathom why counsel would continue to fail to acknowledge or discuss relevant authority when he has been explicitly directed to do so on at least two prior occasions.

8

stop was not illegal would sharply cut against our longstanding and recently re-affirmed policy of requiring parties to present their arguments to the court below:

> It is manifestly unfair for a party to go into court and slumber, as it were, on his defense, take no exception to the ruling, present no point for the attention of the court, and seek to present his defense, that was never mooted before, to the judgment of the appellate court. Such a practice would destroy the purpose of an appeal and make the supreme court one for deciding questions of law in the first instance.

*Id*. (quoting *Garcia-Rodriguez*, 162 Idaho at 276, 396 P.3d at 705 (quoting *Smith v. Sterling*, 1 Idaho 128, 131 (1867))). Thus, the Supreme Court held the State was bound by its legal concession below and that it would not consider an argument not raised below in order to affirm, rather than reverse, a district court's holding. *Id*.

The Supreme Court reached a similar conclusion in *State v. Fuller*, 163 Idaho 585, 416 P.3d 957 (2018), a case in which the State appealed from a district court's order suppressing methamphetamine, prescription drugs, and drug paraphernalia found during an inventory search of Fuller's car following his arrest. *Id*. at 587, 416 P.3d at 959. In the trial court, the State argued Fuller's traffic stop was justified as a violation of I.C. § 49-637(1), failing to maintain a lane of travel. *Fuller*, 163 Idaho at 588, 416 P.3d at 960. The district court disagreed and granted the motion to suppress. *Id.*

On appeal, the State made two arguments. *Id.* First, the State repeated its argument from below: that the officer had reasonable suspicion that Fuller violated I.C. § 49-637(1). *Fuller*, 163 Idaho at 588, 416 P.3d at 960. The Supreme Court disagreed. *Id*. at 589, 416 P.3d at 962. Second, the State argued that the officer had reasonable suspicion that Fuller violated I.C. § 49-630(1)--an argument not made in the district court. *Fuller*, 163 Idaho at 589, 416 P.3d at 962. The Court also rejected this argument, holding:

> However, the State raises this argument without having asserted the same before the district court. While the State referenced our discussion of section 49-630 in *Neal*, it did not advance an argument in *Neal* or in this case that the statute was violated. That section 49-630 was not raised below spells the fatal resolution of this argument on appeal. Indeed, "[i]ssues not raised below will not be considered by this court on appeal, and the parties will be held to the theory upon which the case was presented to the lower court." *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017) (quoting *Heckman Ranches, Inc. v. State, By & Through Dep't of Pub. Lands*, 99 Idaho 793, 799-800, 589 P.2d 540, 546-47 (1979)).

*Fuller*, 163 Idaho at 590-91, 416 P.3d at 962-63.

In sum, the Idaho Supreme Court has declined to review arguments (with the term "argument" including the applicability of different exceptions to the warrant requirement) not raised in the district court when *either* reversing *or* affirming the district court in suppression cases, because the argument was not preserved. As noted by the Supreme Court in *Garcia-Rodriguez*, this is consistent with years of Idaho jurisprudence and makes sense in the context of a suppression hearing. *Id.* at 275, 396 P.3d at 704,

In a suppression case, the court begins with the presumption that a warrantless search is constitutionally impermissible. The search remains unreasonable unless the State can prove the search either fell within a well-recognized exception to the warrant requirement or was otherwise reasonable under the circumstances. *State v. Weaver*, 127 Idaho 288, 290, 900 P.2d 196, 198 (1995). In doing so, the State has the burden of proving the facts necessary to establish an exception to the warrant requirement. *State v. Jenkins*, 143 Idaho 918, 920, 155 P.3d 1157, 1159 (2007). To prove that the search fell within an exception or was otherwise reasonable, the State must determine which of the exceptions it intends to argue as the basis for admitting the evidence, admit the evidence that is relevant to that exception, and then argue the exception to the district court. This provides an opportunity for the defendant to address the State's argument, through either additional evidence or argument and allows the trial court to make the relevant findings, providing a more fulsome record on appeal.

When the State fails to articulate the relevant exceptions and then relies on the appellate court to make the argument the State should have made below, but did not, the appellate court must make several assumptions. The first assumption is that the State intended to and would have made the same argument as the analysis provided by the appellate court. The second assumption is that the district court also would have used the same reasoning and reached the same conclusion as the appellate court. For a whole host of reasons, appellate courts should not be making assumptions about what the parties might have argued and what conclusion the district court might have reached.

However, the recent opinions of the Idaho Supreme Court clarify the preservation requirement in this context by requiring the specific argument (the precise exception to the warrant requirement or the basis for the application of the exception) be presented to the trial court in order to be raised on appeal. This permits the trial court to rule on the issue with which it is presented and provides a level appellate playing field. To the extent previous cases held the

10

State need only present the facts that support an exception, but was not required to articulate on which exceptions it was relying,[2] those cases are no longer controlling law in light of *Garcia-Rodriguez*, *Cohagan*, and *Fuller*. There are sound policy reasons for this.

First, by limiting appellate review to arguments raised in the district court, we ensure the preservation requirement is borne by those in the best position to shoulder the responsibility--the parties. This is because the State is in the best position to identify the relevant exceptions to the warrant requirement, present the evidence that supports the application of those exceptions, and argue the application of all relevant exceptions to the trial court. The defense can then respond to the arguments, and the district court can then rule on the articulated exceptions.

If the State is only required to establish the factual basis for an exception to a warrant requirement, the defendant cannot object to the relevance of a specific piece of evidence because he or she does not know to which exception the evidence may apply. Moreover, once the State establishes any factual basis, it can simply say, "We are relying on each and every warrant exception for which there is a factual basis," and that would be sufficient under the State's interpretation of the interplay between the de novo review standard and the "right result-wrong theory" understanding of preservation. For purposes of preservation, the Idaho Supreme Court has made clear that in order to argue the applicability of an exception to the warrant requirement on appeal, the exception must first have been presented to the district court.

Second, this interpretation ensures that the trial court has an opportunity to consider and resolve disputes at a time when the error can be prevented, mitigated, or cured. *See State v. Branigh*, 155 Idaho 404, 416, 313 P.3d 732, 744 (Ct. App. 2013); *State v. Adams*, 147 Idaho 857, 861, 216 P.3d 146, 150 (Ct. App. 2009). For example, if the State does not articulate the applicable exceptions, the trial court must rule on the suppression motion without clarification on the precise argument at hand. It is not the job of the district court to identify all the possible exceptions to the warrant requirement and provide factual findings and legal conclusions on each possible exception. Instead, it is the job of the State to identify, with particularity, the exceptions on which it is basing the admission of the evidence so the trial court can make the appropriate

---

[2]     *See, e.g, State v. Bower*, 135 Idaho 554, 558, 21 P.3d 491, 495 (Ct. App. 2001) ("While prosecutors may customarily address some written or oral argument to the court presenting the State's legal theories as to why the search or seizure was lawful, the prosecutor is not obligated to do so; nor is the trial court precluded from ruling that the evidence was lawfully acquired on a theory different from that advanced by the prosecutor.").

factual and legal findings.  This places no hardship on the State.  After all, the State carries the burden to establish the reasonableness of the search.  Requiring the State to articulate the exceptions on which it is relying is a de minimis requirement.

To require appellate courts to do that which we do not require of the trial court means that appellate courts would not review, but instead decide in the first instance, the validity of a search and subsequent seizure on a theory or argument not addressed by the district court. Requiring the State to articulate the warrant exceptions on which it intends to rely and then limiting appellate review to the arguments actually made before the district court, provides a more fulsome record both for the trial court and appellate courts.  Consequently, the first question the appellate courts must address is whether the issue is preserved.  If so, the appellate courts will determine and apply the relevant standard of review.

### 2.    The de novo standard of review

The de novo standard of review is a free review of legal arguments preserved for appeal. The Idaho Supreme Court clarified the interplay between the concept of preservation and the relevant standard of review as follows:

> It is true that the question of whether a seizure occurred is a question of law over which we exercise free review.  *State v. Bainbridge*, 117 Idaho 245, 247, 787 P.2d 231, 233 (1990).  It is also true that this Court is not "limited by the prosecutor's argument or the absence thereof."  *State v. Veneroso*, 138 Idaho 925, 930, 71 P.3d 1072, 1077 (Ct. App. 2003).  However, it is equally true that "[i]ssues not raised below will not be considered by this court on appeal, and the parties will be held to the theory upon which the case was presented to the lower court."  *Garcia-Rodriguez*, 162 Idaho at 275, 396 P.3d at 704 (quoting *Heckman Ranches, Inc. v. State, By & Through Dep't of Pub. Lands*, 99 Idaho 793, 799-800, 589 P.2d 540, 546-47 (1979)); *see also Weil v. Herring*, 207 N.C. 6, 175 S.E. 836, 838 (1934) ("An examination of the record discloses that the cause was not tried upon that theory, and the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court.").

*Cohagan*, 162 Idaho at 721, 404 P.3d at 663.  This excerpt explains the relationship between the concepts of preservation and de novo review.  To understand the above excerpt as permitting appellate courts to address arguments not raised in the trial court conflates the de novo standard of review with the preservation requirement.  This is an incorrect understanding of standards of review, generally, and the de novo standard of review, specifically.  The standard of review guides the appellate court in determining "how 'wrong' the lower court has to be before it will be reversed."  Mary Beth Beazley, *A Practical Guide to Appellate Advocacy* 12 (2d ed. 2006).

12

> Standards of review balance the power among the courts, enhance judicial economy, standardize the appellate process, and give the parties in a lawsuit an idea of their chance of success on appeal. All of these policies are interconnected. And, when appellate court judges use standards of review faithfully and consistently, these principles are upheld. An examination of the policies underlying standards of review leads to an appreciation of their role in judicial decision making and an appreciation of the significant negative effect brought about when they are misunderstood, manipulated, or ignored.

Amanda Peters, *The Meaning, Measure, and Misuse of Standards of Review*, 13 Lewis & Clark L. Rev. 233, 238 (2009). "[W]hen used properly, standards of review require appellate judges to exercise self-restraint." *Id.* at 235.

The de novo standard of review is a free review of all preserved legal issues. There is a long line of Idaho authority that supports this proposition. In other words, it is a free review of all arguments raised in the district court. This clearly delineates what is properly preserved for appellate review and frees the appellate courts from engaging in word games addressing the difference between "issues," "arguments," and "theories."

We recognize that a district court's legal conclusions are subject to de novo review and in the past have been affirmed on the "right result-wrong theory" rationale, but recognize this does not shed much reasoning on why this has been the case. The Idaho Supreme Court has recently clarified that the de novo standard of review, which frequently utilizes the "right result-wrong theory" analysis is bounded by the arguments presented in the district court. In other words, a de novo review is a de novo review of the arguments presented to the district court. These recent holdings are simply a recognition that all standards of review, including the de novo standard, can only be applied to issues that have been preserved in the district court. In order for the trial court to be affirmed on the "right result-wrong theory" basis, the alternate theory on which the district court is affirmed must still have been presented below; thus precluding the "right result-new theory" basis for affirming a district court.

The "right result-wrong theory" analysis was first addressed in *Gagnon v. St. Maries Light & Power, Co., Limited*, 26 Idaho 87, 141 P. 88 (1914). Therein, Gagnon filed a personal injury complaint resulting from injuries he received during the course of painting an electricity transformer station. *Id*. at 88-89, 141 P. at 89. St. Maries Light & Power filed a demurrer asserting that the complaint failed to allege sufficient facts to support a cause of action and that the wrong parties were named in the complaint. *Id*. at 90, 141 P. at 90. The district court sustained the demurrer on the first ground and Gagnon appealed. *Id*.

13

The Supreme Court held the district court had incorrectly sustained the demurrer on the first ground because the complaint alleged sufficient facts to support a cause of action. *Id*. at 91, 141 P. at 90. Thereafter, the Court noted that although the district court did not specifically address the second ground listed in the demurrer, the issue was relevant to the opinion and should be addressed. *Id.* The Court then stated, "It is also true that, if the demurrer was good on any ground stated, it would be the duty of this court to sustain the trial court, even though he sustained the demurrer on an erroneous ground." *Id.* After analyzing the issue, the Supreme Court held that Gagnon had included the correct parties in the complaint. *Id*. at 95-97, 141 P. at 91-92. Consequently, the Supreme Court *reversed* the district court and remanded the case. *Id*. at 97, 141 P. at 92.

There are two reasons *Gagnon* does not stand for the proposition that the "right result-wrong theory" theory allows an appellate court to affirm a district court decision on a different ground than was argued in the district court. First, the district court was reversed, not affirmed, in *Gagnon*. Second, the statement about affirming the district court on an erroneous ground was dicta and that dicta was grounded in the fact that the Supreme Court analyzed an alternative argument raised and argued in the district court, but on which the district court did not rule, not on a wholly new reason presented for the first time on appeal. Indeed, it appears subsequent cases cited *Gagnon* for the "right result-wrong theory" rationale without ever recognizing the distinction between "right result-wrong theory" and "right result-new theory" or that *Gagnon* stood for the former, not the latter. No other Idaho case clearly explains the rationale behind the "right result-wrong theory" approach.

However, a review of recent Idaho Supreme Court decisions and the origins of the "right result-wrong theory" cases in Idaho, beginning with the seminal case of *Gagnon*, suggest that the de novo standard of "right result-wrong theory" applies when multiple arguments have been presented to the district court and the district court decides the issue on one argument without deciding the other, alternative argument(s). A de novo standard of review should not be read so broadly as to permit parties to be absolved of their responsibility in the trial court, knowing that the appellate courts will consider all of the arguments and then decide the case on arguments that could have, but were not, raised below. Similarly, the de novo standard should not be read as a substitute for the preservation requirement and require the appellate courts to address issues not preserved in the district court. While parties may disagree on the definition of the word "issue,"

14

the Idaho Supreme Court has defined the scope of preservation in the context of a motion to suppress and that definition is binding.

Thus, we hold that on a suppression issue, the State is bound by the legal concessions it made in the district court and is also limited to arguing on appeal the exceptions to the warrant requirement that were presented in the district court. In this case, the State's concession was that the marijuana tincture droplets and tissue paper should be suppressed. The State is now bound by that concession on appeal. The State did not argue that either the search incident to a valid arrest or inevitable discovery theories applied in the district court. Consequently, we decline to address either of those arguments on appeal.

**B.      The Officer Did Not Unlawfully Extend Islas's Detention**

Turning to the merits of the arguments properly before the Court in this case, we conclude the district court correctly ruled the methamphetamine residue was properly admitted because a review of the evidence offered at the suppression hearing shows the officer did not unlawfully extend Islas's detention. However, because the State conceded the inadmissibility of the marijuana tincture droplets and the tissue paper in Islas's pocket, to the extent the district court's order denying the motion to suppress addressed the marijuana and tissue paper, the order was incorrect. Consequently, we reverse that portion of the district court's order denying the suppression of the marijuana tincture drops and tissue paper and remand the case for further proceedings consistent with this opinion.

The evidence shows that during the course of the officer's encounter with Islas, the officer investigated Islas for four different suspected crimes. First, the officer observed Islas violate I.C. § 49-903 by driving on a public roadway after sunset without his headlights on. This observation provided probable cause for the officer to stop Islas's vehicle.

When the officer spoke with Islas, the officer detected an odor of alcohol and observed Islas's glassy, bloodshot eyes and his unzipped pants. These indicators of possible intoxication provided the officer with reasonable suspicion that Islas was committing a second crime of driving under the influence of alcohol (DUI). Thus, the officer began another investigation, independent of Islas's failure to use his headlights.

In addition, the officer also observed the glass pieces in Islas's lap, although the officer did not know what they were. However, when Islas exited the vehicle and the glass pieces fell to the ground, the officer observed "an additional piece that drew special attention." He looked at it

15

briefly and then took Islas to the back of the vehicle. The officer's observation of the glass pieces provided him reasonable suspicion that Islas was committing a third crime of possession of drug paraphernalia.

The officer, unable to simultaneously investigate the DUI and paraphernalia charges, returned to his DUI investigation and conducted the horizontal nystagmus test. After the test, the officer determined Islas was not under the influence of alcohol and concluded his DUI investigation. The officer then returned to his pending paraphernalia investigation and closely examined the glass pieces on the ground. After observing the thick coat of a white and brown crystalline substance on one of the pieces, the officer believed the substance to be methamphetamine and, thus, the officer had probable cause to arrest Islas for possession of drug paraphernalia.

To confirm the substance was methamphetamine, the officer conducted a field test which indicated a presumptive positive identification. That test, as well as the officer's initial observation of the substance, provided the officer with reasonable suspicion that Islas was committing a fourth crime, possession of methamphetamine. To pursue this investigation, the officer called a drug dog, which alerted on Islas's vehicle. This alert provided the officer with probable cause to search Islas's vehicle, where more evidence of paraphernalia and methamphetamine were found.

The officer had multiple crimes to investigate but could only investigate one crime at a time. The initial stop gave rise to at least two additional crimes, and the officer was continuously investigating the crimes when he obtained additional probable cause for a fourth crime. Consequently, the officer did not unlawfully extend Islas's detention.

## IV.

## CONCLUSION

The State's arguments regarding exceptions to the warrant requirement that were not raised in the district court will not be considered on appeal. The officer did not unlawfully extend Islas's detention. To the extent the district court's denial of Islas's suppression motion applied to the marijuana tincture droplets and tissue paper from Islas's pocket, the district court erred and that portion of the order denying the motion to suppress is reversed. The district court did not error as to the suppression of the remainder of the order. Because we do not know if there was other evidence or reasons that supported Islas's guilty plea to the marijuana charge, we

16

decline to vacate the conviction.  Instead, the case is remanded for proceedings consistent with this opinion.

Chief Judge GRATTON and Judge LORELLO **CONCUR.**[3]

---

[3] Judge Gutierrez did not participate in this opinion due to his retirement.