**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47262**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: February 9, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| MALCOLM CORNELIUS MACK, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Christopher S. Nye, District Judge.

Judgment of conviction for possession of a controlled substance with intent to deliver, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Malcolm Cornelius Mack appeals from his judgment of conviction for possession of a controlled substance with intent to deliver. On appeal, Mack argues the district court erred in its denial of his motion to suppress by failing to find that the officer unlawfully prolonged the traffic stop through drug- and contraband-related inquires and initiating a drug-dog sniff. Because Mack did not preserve his argument that the officer's drug- and contraband-related inquires extended the traffic stop and the officer did not unlawfully prolong the stop by conducting a drug-dog sniff, the judgment of conviction is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The officer stopped a car traveling on Interstate-84 (I-84) for excessive window tinting and following too closely to a semi-truck. The officer approached the car from the passenger side and

1

contacted the car's occupants, Caldwell, the driver, and Mack, the passenger. Upon the officer informing Caldwell and Mack about the car's excessive window tint, Caldwell told the officer that the car belonged to his brother. The officer requested Caldwell's driver's license, registration, and proof of insurance. Caldwell provided proof of the car's insurance and his Arkansas driver's license, but had difficulty locating the most recent copy of the car's registration. Caldwell said he had the registration earlier that day and continued to search for the document.

While Caldwell continued to look for the registration, Mack asked the officer how his day was going and offered to provide his identification. Mack produced an Arkansas driver's license and told the officer that he recently moved to Washington. The officer asked Caldwell and Mack where they picked up the car, and Caldwell explained that the car had been at a relative's in Washington and Caldwell flew out to drive the car back to his brother in Arkansas. The officer briefly explained Idaho's window tinting law and asked Caldwell to estimate the distance between him and the semi-truck. Caldwell told the officer that he was a truck driver himself and agreed that he was following too close.

After receiving permission from the officer, Caldwell got out of the car to look for the registration paperwork on the passenger's side. Caldwell located the registration and provided it to the officer. The officer confirmed the registration was current, but then asked Caldwell to speak with him near the front of his patrol car. The officer asked Caldwell if there were any weapons or drugs in the car and if someone asked him to carry anything across state lines. Caldwell said no to both inquiries. The officer commented on the amount of air fresheners in the car, as he observed one clipped to each of the two air vents in the front of the car. Caldwell explained that the car had been "sitting up" which the officer understood to mean the car had been in storage; Caldwell showed the officer a layer of dust near the fuel cap to illustrate his explanation. The officer stated that he had a drug dog in his patrol car and asked Caldwell if the dog would alert to anything within the car. Caldwell shook his head no. The officer asked Caldwell to stand in front of the car.

The officer returned to his patrol car to begin a driver and warrant check. Because dispatch was not immediately available to run the information, the officer exited his patrol car and measured the window tinting on Caldwell's car. When the officer finished measuring the window tint, he returned to his patrol car and checked in with dispatch. Dispatch was available to perform a driver and warrant check, so the officer relayed the relevant information, told dispatch he was going to deploy his drug dog, and then terminated the call without waiting to get information back from

2

dispatch.[1] The drug dog performed an exterior sniff of the perimeter of Caldwell's car and the dog alerted outside the passenger's window. The officer returned to his patrol car and requested backup for the positive alert. Marijuana was found during a subsequent search of the car's trunk. Mack admitted sole ownership of the marijuana. Caldwell was released without being issued any citations. The State charged Mack with trafficking in marijuana, a felony.

Mack filed a motion to suppress all evidence obtained as a result of the traffic stop. Mack argued, in part, that even if the officer had reasonable suspicion to conduct the traffic stop, he "abandoned his original purpose in making the stop and began a drug investigation without reasonable suspicion to do so. Thus the drug-dog search, followed by the search of the inside of the vehicle, was unlawful and unconstitutional." The district court held a suppression hearing. The officer testified to various details he witnessed during the traffic stop that gave rise to his belief that Caldwell and Mack were involved in drug activity. The officer also testified that many of the details he noticed, like traveling with cash and having luggage with airline tags in the backseat, were not unusual for travelers. The district court found that the stop and search were constitutional and subsequently denied Mack's motion.

Pursuant to an Idaho Criminal Rule 11 plea agreement, Mack entered an *Alford*[2] plea to an amended charge of possession of a controlled substance with intent to deliver, a felony, and reserved his right to appeal the denial of his motion to suppress. The district court sentenced Mack to three years, with one year determinate, suspended the sentence, and placed him on probation.[3] Mack timely appeals.

---

[1]    The Court notes that Corporal Cottrell was wearing a radio and perhaps could have received a call back from dispatch whether or not he was in his patrol car on his radio. Nonetheless, Corporal Cottrell's exiting the vehicle while dispatch ran the check was not the basis of any relevant argument or finding in the district court.

[2]    *See North Carolina v. Alford*, 400 U.S. 25 (1970).

[3]    The record indicates a discrepancy between the oral pronouncement of Mack's sentence and the sentence written in his judgment of conviction. However, "[w]hen there is a disparity between the sentence imposed in open court and that expressed in the written judgment of conviction, it is the orally pronounced sentence that is effective." *State v. Watts*, 131 Idaho 782, 786, 963 P.2d 1219, 1223 (Ct. App. 1998).

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

On appeal, Mack argues the district court erred in denying his motion to suppress. Mack alleges the district court erred by finding that the officer did not unlawfully prolong the traffic stop because the officer's questions to Caldwell about drug- and contraband-related activities and the officer's use of a drug dog constituted extensions from the traffic stop that were not supported by reasonable suspicion. In response, the State argues the district court did not err. First, the State contends Mack's argument that the officer unlawfully prolonged the traffic stop through drug- and contraband-related inquiries is unpreserved on appeal and, alternatively, fails on the merits. Second, the State alleges the drug-dog's sniff did not unlawfully prolong the traffic stop. Finally, the State argues that even if the officer did add time to the traffic stop, independent and reasonable suspicion of drug activity justified the extension.

### A. Mack's Argument That the Officer Unconstitutionally Extended the Stop Through His Drug- and Contraband-Related Inquires Was Not Preserved for Appeal

In his reply brief, Mack asserts that whether the officer's drug- and contraband-related inquires unconstitutionally extended the stop was preserved because: (1) Mack's affidavit alleged that the officer abandoned his traffic mission because it asserted that the officer engaged Mack in small talk instead of checking to see if Caldwell had outstanding warrants; (2) Mack's brief in support of his motion to suppress described the drug- and contraband-related inquires that the officer made after receiving his registration paperwork; (3) Mack's brief in support of his motion to suppress extensively cited to *State v. Gutierrez*, 137 Idaho 647, 51 P.3d 461 (Ct. App. 2002);

4

and (4) Mack's trial counsel questioned the officer about the drug- and contraband-related inquires during the suppression hearing. Therefore, Mack argues he sufficiently raised the issue and his substantive position on this issue below and his argument has permissibly evolved on appeal. Appellate courts have long held that generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). This requirement, known as issue preservation, limits appellate court review to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). The issue preservation doctrine serves important purposes: it divides the labor between the trial and appellate courts; limits the costs of litigation by narrowing what issues remain to be decided as a case proceeds throughout the appellate process; encourages parties to expose trial courts to the strongest possible arguments as they make their decisions; and defines the bounds of judicial power by appropriately limiting appellate courts' authority. *State v. Islas*, 165 Idaho 260, 265-66, 443 P.3d 274, 279-80 (Ct. App. 2019). Further, imposing the consequences of issue preservation on appeal facilitates fairness, as allowing a party to change positions on appeal would be prejudicial to the other party, whom did not have the opportunity to address and respond at the trial court level, and unfair to the trial court by exposing it to findings of error on an issue that it did not have the opportunity to address. *State v. Gonzalez*, 165 Idaho 95, 99-100, 439 P.3d 1267, 1271-72 (2019). Thus, to be properly preserved for appeal, both the issue and the party's position on the issue must be raised before the trial court. *Id.* at 99, 439 P.3d at 1271.

Mack did not raise whether the officer's drug- and contraband-related inquires unconstitutionally extended the stop before the district court. In his initial affidavit supporting his motion to suppress, Mack alleged the officer abandoned his traffic violation mission when he engaged Mack in small talk instead of checking to see if Caldwell had outstanding warrants. However, this conversation is not the conversation that Mack now asserts unconstitutionally extended the traffic stop because it is not the one where the officer made drug- and contraband-related inquires of Caldwell. Thus, this affidavit did not raise the issue Mack now asserts.

Similarly, Mack did not raise the issue in his brief in support of his motion to suppress. Although Mack's brief included portions that may be applicable to a claim that drug- and contraband-related inquires added time to the stop, for example his descriptions of the officer's drug- and contraband-related inquires and his citations to *Gutierrez*, Mack never explicitly claimed

5

these inquires extended the stop. Without connecting the case law and applicable facts to a clear issue, Mack left it to the State, the district court, and now this Court, to determine what issues he wished to raise through his motion to suppress.

Moreover, despite being presented with multiple opportunities, Mack did not take any actions to clarify this issue to the district court. After the State's brief in opposition to the motion to suppress did not address the issue, Mack did not file a reply brief clarifying this issue or explaining how the State misinterpreted the issue. At the suppression hearing, Mack's counsel briefly asked the officer about the drug- and contraband-related inquires and whether these questions to Caldwell pertained to a drug investigation. However, Mack's counsel never connected these brief inquires to a specific issue and did not provide closing argument to the district court to summarize or include this argument at the close of evidence. When the district court summarized its understanding of Mack's arguments, which did not include whether the officer's drug- and contraband-related inquires unconstitutionally extended the stop, Mack did not correct the court's understanding.

Mack now asks this Court to piece together portions of the record including an unrelated portion of an affidavit, a lone citation in his brief in support of his motion to suppress, and a passing exchange with the officer during the suppression hearing to find the resulting patchwork sufficiently preserved the issue that the officer's drug- and contraband-related inquires unconstitutionally extended the stop. This we decline to do. Accordingly, Mack has not preserved the issue for appeal.

## II.     The Drug-Dog Sniff Did Not Add Time to the Traffic Stop

Mack alleges the officer additionally prolonged the traffic stop by conducting a drug-dog sniff of Caldwell's car. Mack argues the district court's finding that the officer checked on the status of the return after conducting the dog sniff and received a response from dispatch is clearly erroneous and, thus, the dog sniff unconstitutionally prolonged the traffic stop without reasonable suspicion to conduct a drug investigation.

Because addressing the infraction is the purpose of a traffic stop, the stop may last no longer than is necessary to effectuate that purpose. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Thus, in the context of traffic stops, authority for the seizure ends when the tasks related to the infraction are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Such tasks include ordinary inquiries incident to the traffic stop such as checking the

6

driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez*, 575 U.S. at 355.

Yet, "the Fourth Amendment tolerates certain unrelated investigations that do not lengthen the roadside detention." *State v. Renteria*, 163 Idaho 545, 549, 415 P.3d 954, 958 (Ct. App. 2018). While an officer may conduct certain unrelated checks during an otherwise lawful traffic stop, the officer may not do so in a way that prolongs the stop, absent the reasonable suspicion to justify the additional detainment. *Id.* While a drug-dog sniff cannot fairly be characterized as part of the officer's traffic mission, "it is well-established that a drug-dog sniff conducted during a lawful traffic stop is constitutionally permissible if it is executed in a reasonable manner and does not itself infringe upon a constitutionally protected privacy interest." *State v. McGraw*, 163 Idaho 736, 739, 418 P.3d 1245, 1248 (Ct. App. 2018). It follows that when an officer conducts a drug-dog sniff after a traffic stop has otherwise been completed, the sniff is unconstitutional, absent independent reasonable suspicion to support the drug investigation. *Id.*

Taken together, the critical question is not when the dog sniff occurs, but whether conducting the sniff adds time to the stop. *Rodriguez*, 575 U.S. at 357. Under this framework, the Fourth Amendment allows for dog sniffs, absent reasonable suspicion, that do not add time to the traffic stop. *State v. Linze*, 161 Idaho 605, 609, n.1, 389 P.3d 150, 154, n.1 (2016). Thus, as long as it does not add time to the traffic stop, an officer may execute a drug-dog sniff while he simultaneously continues the investigation into the traffic offense. *See id.* (noting it is permissible for one officer to pursue original traffic stop objectives while second officer conducts dog sniff). Similarly, it is not be an extension of a traffic stop if an officer pursues inquires not related to the initial purpose of the stop while he awaits a response from dispatch on the driver or warrants check. *Renteria*, 163 Idaho at 549, 415 P.3d at 958 (holding that because officer was still awaiting response from dispatch, his conversation with another officer about driver's possible involvement in drug activity did not unlawfully extend traffic stop).

The district court found that "[a]fter the sniff was complete, the officer took [the dog] back to his patrol car and checked on the status of the return from dispatch. Dispatch had completed the return. The car registration was accurate and neither occupant was 'wanted' by law enforcement." The district court also found that the officer "performed the canine sniff while he was waiting for a return from dispatch." The district court then held that "the drug dog sniff was completed <u>before</u> all of the tasks typically incident to a traffic stop were, or reasonably should have

7

been, complete." Mack asserts the factual findings underlying the legal conclusions are clearly erroneous because there is no evidence either that the officer checked on the dispatch return prior to the drug-dog's positive alert or that dispatch ever completed the return and, therefore, the district court's finding that the officer performed the dog sniff while waiting for a return from dispatch was clearly erroneous. We disagree.

The record demonstrates that after procuring the relevant licenses and registration, the officer testified that he returned to his patrol car to run a driver's check, but dispatch told him to stand by because of an emergency occurring simultaneously. When dispatch was able to receive the officer's driver's check request, the officer provided the relevant information for dispatch to conduct the check. A review of the video exhibit admitted at the suppression hearing shows that the officer told dispatch he would be on canine deployment and he immediately proceeded to conduct a drug-dog sniff of Caldwell's car. The drug dog alerted at the front passenger window, and the officer testified that he "had not received a return from dispatch when the dog was deployed and gave an active alert indication." Whether the officer checked on the return from dispatch does not change the fact that the officer had not received a return from dispatch at the time the drug dog alerted on the vehicle. Therefore, substantial and competent evidence supported the district court's finding that the officer performed the drug-dog sniff while he was waiting for the return from dispatch and dispatch did not provide the return until after the dog gave a positive alert on Caldwell's car. Consequently, the drug-dog sniff and positive alert occurred while the officer waited for a dispatch return on the driver's check; thus, the drug-dog sniff did not add time to the stop. Because a positive drug-dog alert provides probable cause to conduct a drug investigation, *State v. Tucker*, 132 Idaho 841, 843, 979 P.2d 1199, 1201 (1999), the subsequent search was constitutional and the district court did not err in denying Mack's motion to suppress. Accordingly, we need not address Mack's additional argument on appeal.

## IV.

## CONCLUSION

Whether the officer's drug- and contraband-related inquires unconstitutionally extended the traffic stop was not preserved for appeal. Because the officer initiated the drug-dog sniff while waiting for a return from dispatch on the driver's check and the dog gave a positive alert while the officer was still waiting for the return, the use of the dog did not add time onto the traffic stop. Thus, the search was constitutional and Mack was not entitled to the suppression of evidence.

8

Accordingly, the district court did not err in denying Mack's motion to suppress and the judgment of conviction is affirmed.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.