**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49235**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: April 14, 2023 |
| Plaintiff-Appellant, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| HENRY SANCHEZ, JR., | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. Rosemary Emory, District Judge.

Order granting suppression motion, <u>reversed</u> and <u>case remanded</u>.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for appellant.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for respondent.

_____

BRAILSFORD, Judge

The State appeals from the district court's order granting Henry Sanchez, Jr.'s motion to suppress. We reverse and remand.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The parties do not dispute the district court's factual findings in its decision granting Sanchez's suppression motion. Those facts show that in January 2021, Sergeant Wethern assisted in executing a search warrant for stolen items on a property in Jerome, which he described as "the main residence, a camper to the east, a camper to the west, and several outbuildings." Sergeant Wethern secured the western camper by removing its occupants, including locating Sanchez in the camper and detaining him. While securing the camper, Sergeant Wethern smelled the odor of "burnt marijuana," but he did not search the camper.

1

Sergeant Wethern then arrested all the western camper's occupants, including Sanchez, for frequenting a place where controlled substances are known to be located. Idaho Code § 37-2732(d). Sanchez was taken to jail where he was searched and methamphetamine was found on his person. After Sergeant Wethern secured the western camper, law enforcement obtained a second warrant to search the property for narcotics based on the marijuana odor detected in the camper and on narcotics "observed by other teams that had searched the main residence."

The State charged Sanchez with possession of methamphetamine, marijuana, and paraphernalia. Sanchez moved to suppress the methamphetamine found on his person at the jail following his arrest for frequenting a place where controlled substances are known to be located.[1] In support, Sanchez argued "an unreasonable search and seizure" occurred because "there was no cause to stop, detain or arrest" him.

At the suppression hearing, the State presented Sergeant Wethern's testimony. During his direct examination, the prosecutor inquired about the second search warrant; Sanchez's counsel objected to the relevance of that warrant; and the district court sustained the objection, ruling the second warrant was irrelevant. Following this exchange, the prosecutor asked Sergeant Wethern no further questions.

After the suppression hearing, the parties briefed the motion. Sanchez asserted that probable cause did not support his arrest for frequenting and that the inevitable discovery doctrine was inapplicable because "the second search warrant was not issued until after [he] had been arrested, transported to the Jerome County Jail, and methamphetamine was presumptively found upon his person." The State responded that probable cause supported Sanchez's arrest, but if not, that the district court should reconsider its ruling that the inevitable discovery doctrine did not apply and should "re-open the suppression hearing for further testimony so that the [State could] meet its burden of proof."

In support of the State's request to "re-open" the suppression hearing, the State outlined the additional evidence it intended to submit at such a hearing. For example, the State asserted that it would present evidence that while executing the second search warrant, law enforcement

---

[1] Sanchez did not identify in his suppression motion the evidence he sought to exclude. During the suppression hearing, however, Sanchez's counsel requested suppression of "the methamphetamine that was found once [Sanchez] was transported to the Jerome County Jail." Sanchez's counsel also stated the charges related to the second search warrant "aren't before the Court."

2

discovered and seized methamphetamine, marijuana, drug paraphernalia, and Sanchez's driver's license in the western camper; after this discovery, it would have arrested Sanchez, if he had not already been arrested; and then, it would have lawfully discovered methamphetamine on Sanchez's person. The district court entered a written decision granting Sanchez's suppression motion. Further, the court rejected the State's request to reopen the hearing.

The State timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

### A.     Probable Cause

The State argues the district court erroneously found Sergeant Wethern lacked probable cause to arrest Sanchez. The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. A warrantless search is presumptively unreasonable unless it falls within certain special and well-delineated exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ferreira*, 133 Idaho 474, 479, 988 P.2d 700, 705 (Ct. App. 1999). A search incident to a valid arrest is among those exceptions and does not violate the Fourth Amendment proscription against unreasonable searches. *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *State v. Moore*, 129 Idaho 776, 781, 932 P.2d 899, 904 (Ct. App. 1996). Pursuant to this exception, the police may search an arrestee incident to a lawful custodial arrest. *United States v. Robinson*, 414 U.S. 218, 235 (1973); *Moore*, 129 Idaho at 781, 932 P.2d at 904. The permissible scope and purpose of a

3

search incident to an arrest is not limited to the removal of weapons but includes the discovery and seizure of evidence of crime and articles of value, which the arrestee might use to facilitate an escape if left in his possession. *Moore*, 129 Idaho at 781, 932 P.2d at 904.

Evidence obtained during a search incident to a lawful arrest is generally admissible, but evidence obtained during a search subsequent to an unlawful arrest is not. *State v. Bishop*, 146 Idaho 804, 816, 203 P.3d 1203, 1215 (2009). For an arrest to be considered lawful, probable cause must exist to believe the arrestee has committed a crime. *Id.* "Probable cause exists when the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been [or is being] committed." *Id.* (internal quotation marks omitted). Probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that such person is guilty. *State v. Islas*, 165 Idaho 260, 264, 443 P.3d 274, 278 (Ct. App. 2019). In analyzing whether probable cause existed, this Court must determine whether the facts available to the officers at the moment of the seizure warranted a person of reasonable caution to believe that the action taken was appropriate. *Id.* The facts making up a probable cause determination are viewed from an objective standpoint. *Id.*

In this case, Sergeant Wethern arrested Sanchez for frequenting in violation of I.C. § 37-2732(d). That statute prohibits "any person to be present at or on premises of any place where he knows illegal controlled substances are being manufactured or cultivated, or are being held for distribution, transportation, delivery, administration, use, or to be given away." This Court has previously held in *State v. Crabb*, 107 Idaho 298, 303, 688 P.2d 1203, 1208 (Ct. App. 1984), that a violation of this statute requires a showing that the arrestee had knowledge that an illegal substance was located at the place frequented.

In *Crabb*, an undercover officer received a telephone call from Robert Shook, who offered to sell the officer cocaine. *Id.* at 301, 688 P.3d at 1206. Shook, however, indicated he had not yet obtained the cocaine from his source, would meet the officer at a truck stop, and would bring the source to that meeting. *Id.* Following this phone call, Shook, who was under surveillance, went to a mobile home, picked up another man, went to the truck stop, met the officer, sold him cocaine, and was arrested. *Id.* The officer then obtained a search warrant for the mobile home. *Id.* When officers executed the warrant, they encountered Crabb at the home and arrested him for frequenting a place where controlled substances were known to be located. *Id.* at 303, 688 P.2d at 1208.

4

On appeal of the denial of Crabb's suppression motion, this Court addressed whether the officers lawfully arrested Crabb for frequenting in violation of I.C. § 37-2732(d). *Crabb*, 107 Idaho at 303, 688 P.2d at 1208. The Court concluded violating this statute requires more than simply being present at a place "where controlled substances are sold." *Id.* Rather, it requires "a person frequent a place where he *knows* illegal controlled substances are being held . . . ." *Id.* The Court concluded that, because the officers did not have reason to suspect "Crabb *knew* that illegal controlled substances were being held" at the mobile home, they unlawfully arrested him "for his mere presence at a place suspected of containing controlled substances." *Id.* Accordingly, the Court concluded the search of Crabb's person was not incident to a lawful arrest. *Id.*

In this case, the State attempts to distinguish *Crabb* and argues Sergeant Wethern "could have reasonably found Sanchez was knowingly present in a place containing a controlled substance" because Sergeant Wethern "smelled burnt marijuana inside the camper, and knew additional drugs were on the rest of the property." Specifically, Sergeant Wethern's testimony was that "there was [sic] narcotics observed by other teams that had searched the main residence." As the district court noted, however, the prosecutor never asked Sergeant Wethern "if he had any information tying Sanchez to the main residence." That Sergeant Wethern knew narcotics were discovered in the main residence does not show Sanchez knew the main residence contained narcotics. Absent evidence that Sanchez knew narcotics were located in the main residence, the presence of those narcotics does not support a probable cause finding.

We disagree with the State's argument to the contrary that "an officer can consider facts beyond a suspect's own knowledge in weighing the totality of the circumstances for a frequenting arrest." In support of this argument, the State relies on *State v. Williams*, 162 Idaho 56, 394 P.3d 99 (Ct. App. 2016). In that case, officers were surveilling an apartment, which they believed to be the residence of a person subject to an arrest warrant. *Id.* at 59, 394 P.3d at 102. After conducting surveillance for thirty minutes, the officers saw four individuals, including Williams, exit the apartment and stand in front of the apartment door. *Id.* An officer smelled the strong odor of marijuana emanating from the apartment and asked the apartment owner if there was marijuana and drug paraphernalia inside the apartment, and she admitted there was. *Id.* Based on this evidence, the officers arrested Williams for frequenting a place where controlled substances are known to be located. *Id.* Reviewing the denial of Williams' suppression motion, this Court

5

concluded substantial evidence supported a probable cause finding to arrest Williams for frequenting. *Id.* at 66, 394 at 109.

The State argues *Williams* "is nearly identical" to this case "on the facts" and that "a frequenting arrest" can be "justified with just one more fact that has nothing to do with the suspect's personal knowledge." We disagree. In *Williams*, substantial evidence supported a probable cause finding because Williams was present in the apartment; an officer detected the odor of marijuana emanating from the apartment; and the apartment owner admitted the presence of marijuana in the apartment. *Id.* at 59, 394 P.3d at 102. From these facts, the officer could reasonably infer Williams knew marijuana was present in the apartment where he had also been present.

In contrast to *Williams*, no evidence in this case supports that Sanchez was at the main residence where drugs were present or that Sergeant Wethern knew that drugs were located in the western camper before arresting Sanchez for frequenting. As a result, the only fact known to Sergeant Wethern at the time he arrested Sanchez was that Sergeant Wethern smelled the odor of burnt marijuana in the camper. This fact alone is insufficient to support a probable cause finding. Although an odor of burnt marijuana might indicate that, at some point in time marijuana may have been present in the camper, it does not establish that marijuana was present in the camper when Sanchez was or that he knew marijuana was in the camper. Accordingly, no reasonable inference can be made that Sanchez knew marijuana was located in the camper, and the district court did not err by concluding insufficient evidence existed to support a probable cause finding for his arrest.

## B. Inevitable Discovery Doctrine

Alternatively, the State asserts that, even if Sergeant Wethern lacked probable cause to arrest Sanchez for frequenting a place where he knew controlled substances to be located, the officers would have inevitably discovered methamphetamine on Sanchez's person after the second search warrant's execution on the western camper. Based on this assertion, the State argues the district court "erred by determining the second [search] warrant was irrelevant to showing the suppressed jail-search evidence would have been inevitably discovered" and "by not reconsidering this ruling."

As an initial matter, the parties dispute the applicable standard of review for evaluating the district court's denial of the State's request for reconsideration of its evidentiary ruling on the

6

second search warrant's relevance. Sanchez asserts the multi-tiered abuse of discretion standard applies. Under this standard, an appellate court inquires whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018). The State disagrees, cites civil case law, and argues that there is a "*conflict* [in the case law] over which standard applies and that the standard is the 'same standard of review the [district court] used in deciding the motion for reconsideration.'"

The State, however, never identifies on appeal what that "same standard" is. Further, we note that in the State's brief in opposition to Sanchez's suppression motion, the State asserted "the decision to grant or deny a request for reconsideration generally rests in the sound discretion of the trial court" and set forth the multi-tiered analysis. Meanwhile, the State identified the issue for reconsideration as the district court's ruling on the relevancy of the second search warrant. Generally, courts review questions of relevance de novo. *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

Regardless of the applicable standard of review, we conclude the district court erred by ruling the second search warrant was not relevant to the inevitable discovery doctrine's application. Under this doctrine, the State must demonstrate by a preponderance of the evidence that law enforcement would have discovered the unlawfully obtained evidence by a lawful method. *State v. Rowland*, 158 Idaho 784, 787, 352 P.3d 506, 509 (Ct. App. 2015). Although the lawful method of discovery does not need to be the result of a wholly independent investigation, it must result in some action, actually taken or in the process of being taken, which would have inevitably led to the discovery of the unlawfully obtained evidence. *Id*. The rule does not permit a court to speculate on the course of action the investigation could have taken absent a constitutional violation. *State v. Maxim*, 165 Idaho 901, 909, 454 P.3d 543, 551 (2019). "The question is not what legal path the police would have inevitably taken which could have yielded the evidence. The question is what legal path the police actually took which would have inevitably yielded the evidence." *Id*.

During the suppression hearing, Sergeant Wethern testified that he detained Sanchez while the first search warrant was being executed; "anybody on the premises is going to be secured so they're not a threat while we execute the search warrant"; "normally we would detain all of them

until the search warrant [was] complete"; a second search warrant was obtained to search for drugs; and "normally [law enforcement] would detain people on the premises while [they] secured a second search warrant." Thereafter, the prosecutor inquired about the second search warrant, and the following exchange occurred:

Q.          And so was a second search warrant obtained?
A.          It was.
[Defense]:  Your Honor, I'm going to object. The witness has already testified
            that [Sanchez] was placed under arrest prior to the second search
            warrant. As the Court's aware, it's an objective standard, and it's
            based upon the knowledge that the officer had at the time of
            [Sanchez's] arrest. [The officer has] also testified as a result of
            arrest that [Sanchez] was taken and searched in the jail, so I think
            any subsequent search warrant is irrelevant.
The Court:  What is the relevance?
[Prosecutor]: Your Honor, there's the doctrine of inevitable discovery that could
            be applied in this circumstance, and so the procedure for the
            subsequent detention and search of the property would have still
            manifested the same drugs and, therefore, inevitable discovery
            would have--
The Court:  How does inevitable discovery apply to an arrest if he was already
            arrested?
[Prosecutor]: Well, Your Honor, he would have been detained--normally would
            be detained out at the premises. By being detained out there, they
            would have--if they would not have arrested him for the frequenting,
            he would have subsequently been arrested under the inevitable
            discovery doctrine, still transported to the jail, and still found the
            meth in his pocket.
The Court:  Care to respond to that, [Defense Counsel]?
[Defense]:  No, Your Honor. I don't think the inevitable discovery exception
            applies to this. It's simple. I think the police report and the
            testimony's clear. [Sanchez] was arrested for frequenting based on
            smell, he was transported to the jail, and that was found in his
            pocket. Thereafter, a second warrant was issued, and those charges
            aren't before the Court.
The Court:  Well, I agree with [Defense Counsel]. I don't believe the inevitable
            discovery doctrine applies in this case in the absence of some arrest
            warrant that was already issued for [Sanchez's] arrest for some other
            crime. I don't see how this is inevitable discovery, so I'm going to
            sustain the objection.

Contrary to the district court's statement at the suppression hearing, however, the inevitable discovery doctrine's application is not dependent on the issuance of "some arrest warrant that was already issued for [Sanchez's] arrest for some other crime." Similarly, the doctrine's application does not turn on "testimony supporting probable cause for the arrest of Sanchez," as the court

8

stated in its written order denying the suppression motion. Rather, the relevant inquiry under the inevitable discovery doctrine is "what legal path the police actually took which would have inevitably yielded the evidence." *Maxim*, 165 Idaho at 909, 454 P.3d at 551. As the prosecutor stated, that legal path in this case was "the subsequent detention and search of the property" for drugs under the second search warrant "which would have still manifested the same drugs."

Proof that the officers discovered both illegal substances in the western camper and evidence linking Sanchez to those substances is essential to any analysis of whether the officers would have inevitably discovered the methamphetamine on Sanchez's person. Accordingly, the facts regarding the second search warrant--including its execution and the evidence discovered-- would tend to make more or less probable that law enforcement would have inevitably discovered the drugs Sanchez sought to suppress. *See* Idaho Rule of Evidence 401 (defining relevance as having tendency to make existence of fact more or less probable). For this reason, the district court erred by ruling the second search warrant was irrelevant and by declining to reconsider this ruling.

## IV.

## CONCLUSION

The district court erred by granting Sanchez's suppression motion and by denying the State's motion for reconsideration. Accordingly, we reverse the court's order granting suppression of the evidence discovered on Sanchez's person at jail and denying reconsideration and remand for further proceedings consistent with this opinion.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.

9